(71 South. 784)

No. 20523.

## BANK OF COUSHATTA v. YARBOROUGH et al.

(May 9, 1916.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS ⬤≈61(2) — UNITED STATES LANDS—CONVEYANCE BY STATE.

The approval, by the Secretary of the Interior, of a list of swamp lands, selected for conveyance to the state, under the act of Congress of March 2, 1849, c. 87, 9 Stat. 352, constitutes the title of the state, and, where an entire section is so listed and approved, there is no authority in the register of the land office, to dispose of it as a fractional section, and, still less, to sell the unsurveyed part of such section, uncovered by the recession of water.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 193; Dec. Dig. ⬤≈61(2).]

2. PUBLIC LANDS ⬤≈61(8) — UNITED STATES LANDS—SWAMP LANDS.

When an approved list of swamp lands specifically mentions a whole section, and, the survey having been incomplete, contains the statement that the land area is estimated, an entryman who buys upon the basis of such estimated acreage and under a description calling for all of a "fractional" section acquires no title to the unsurveyed balance of the section, subsequently uncovered by the recession of water.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 203; Dec. Dig. ⬤≈61(8).]

3. WATERS AND WATER COURSES ⬤≈98—RIPARIAN RIGHTS—ENFORCEMENT.

In order to entitle a purchaser of public lands to recover, in his capacity of riparian proprietor, land which is unsurveyed and is uncovered by the recession of water, he must allege and show the existence of the conditions pre-

scribed by law, if such there be, entitling him to recover.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 104; Dec. Dig. ⬤⟲ 98.]

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Action by the Bank of Coushatta against J. C. Yarborough and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Thomas W. Nettles, of Coushatta, for appellant. Scarborough & Carver, of Natchitoches, and Foster, Looney & Wilkinson, of Shreveport, for appellees.

## Statement of the Case.

MONROE, C. J. Plaintiff brings this suit for the recovery of the "southwest fractional quarter of section 34, township 13 north, range 11 west, containing 151.70 acres, being that part of section 34 lying west of Boggy bayou." It alleges that the property was mortgaged to it to secure a note for $3,600, executed by R. W. & B. D. Yarborough, that the note was not paid at maturity, and that it foreclosed the mortgage and bought in the property, but that Charles R. and John C. Yarborough have possession and decline to surrender it. It sets up title, through mesne conveyances, under William T. Fortson, who, in 1859, bought from the state of Louisiana warrant No. 7087, for 560 acres of swamp and overflowed land, for which, on July 6, 1859, he is said to have received patent No. 6829, for "all of fractional Sec. 34, T. 13 N., R. 13 W.," containing 560 acres. It alleges, in the alternative, that the property was adjudicated to it for $2,500; that, after deducting costs, there is a balance of the mortgage debt, still due, of $1,884.48, for which it has judgment against the original debtors; and, that, if Charles R. and John C. Yarborough ever acquired any title to the property in question, which it denies, such title inured

to it, for the reason that R. W. & B. D. Yarborough, its authors in title, purchased said property from John C. Yarborough on January 14, 1905, by an act of sale in which it was erroneously described as "that portion of section 24 lying *south* of Butler's slough and east of Boggy bayou," when the intention was to "convey all that portion of said section * * * lying *north* of Butler's slough and *west* of Boggy bayou," and that said John C. Yarborough warranted the title so intended to be conveyed, and is therefore petitioner's warrantor, and that he having purchased from Charles R. Yarborough, with warranty of title, the latter is also the warrantor of petitioner. Further pleading in the alternative, petitioner alleges that, should the land here claimed be decreed to belong to John C. and Charles R. Yarborough, it should have judgment against them holding said land to be burdened with the mortgage indebtedness of $1,884.48, with interest, costs, etc., and ordering the property to be seized and sold therefor. And the prayer of the petitioner is in conformity with the allegations.

Defendants John C. and Charles R. Yarborough set up title to the land in question, as having been acquired by Charles R. Yarborough, by patent from the state, of date, February 1, 1907 (an undivided half interest therein having been subsequently sold by him to John C. Yarborough). They deny that there was any error in the description of the land sold by John C. Yarborough to R. W. & B. D. Yarborough, and further deny that Fortson, or any one claiming under him, ever acquired the whole of section 34, or any part of it to the westward of Boggy bayou, and allege that R. W. & B. D. Yarborough have been discharged in bankruptcy from the claim set up by plaintiff.

It appears, from the evidence, that "John Boyd, deputy surveyor and agent of the state for selecting swamp lands," on June 27, 1850, made a selection of "fractional section

34," as inuring to the state under the act of Congress of March 2, 1849, the list prepared by him containing the statement and figures (under the heading "Area") "Not ascertained," and (under the heading "Remarks by the Register") "542.00." But, according to the certificate from the Department of Interior, of date May 7, 1852, the list that was *approved* carried section 34 as a *whole section,* the *"estimated area"* of which was 560 acres, and it is shown, beyond question, that no survey of the lower half of the section was then made, because it was submerged beneath the waters of Bayou Pierre Lake, nor was the border of the lake meandered. In the course of time, however (probably by reason of work done by the state, the levee boards and the United States), Bayou Pierre Lake appears to have gone dry, or partially so, and in 1906 the Governor ordered the uncovered land in section 34 to be surveyed, after which, on February 1, 1907, he issued the patent to Charles R. Yarborough to "the fractional southwest quarter of section 34 (lake land), * * * containing 151.70 acres, according to the official plat of survey in the state land office."

Mr. W. S. Trichel, called as witness for plaintiff, testified that he made the survey under the authority of the register of the state land office, who had been ordered by the Governor to have the unsurveyed portion of section 34 surveyed; that he found 151 and a fraction acres west of Boggy bayou; that section 34 is a full section of 640 acres; that he had examined the plat of the original survey made by the United States engineer in 1835, and that it shows that no survey was made to the westward of Boggy bayou; that the land dividing the high land in the section from the lake had not been meandered until that work was done by him; that the section lines of the original survey stopped at the waters edge; that, as no line dividing the high land from the lake bottom

had been surveyed, the acreage of the land sold to Fortson was, necessarily, estimated, and "there was no acreage given by the government surveys in their returns to the United States."

The register's testimony corroborates that of Mr. Trichel. He says:

"Surveys were made by the United States government of the high land in this section, and the state of Louisiana surveyed the dried lake, or low lands. The United States, however, did not."

He further says that the line dividing the high from the low lands was not surveyed prior to the survey by Trichel, and hence that in the sale to Fortson the acreage was necessarily estimated.

The patent issued to Fortson was not produced, and the register testified that, prior to November 21, 1861, verbatim copies of the patents issued were not kept in the land office. The record, as copied and produced, shows that the patent in question called for "all of frac'l" section 34, containing 560 acres; but, on the other hand, as we have stated, the section was approved to the state, as a full section, the "estimated area" of which was 560 acres.

### Opinion.

No effort was made to sustain, by evidence, plaintiff's allegation that there was error in the description of the land sold by John C. Yarborough to R. W. and B. D. Yarborough, and the questions suggested by that allegation need not be further considered.

[1] Section 34 having been specifically approved to the state as "the whole of section 34," with an *"estimated area* of 560 acres," the whole of it, surveyed and unsurveyed, immediately fell under the dominion of the state law, as then existing and as thereafter enacted. The act of 1849 provided that lists of swamp lands, selected for conveyance to the state, should be certified by the deputies and surveyor general to the Secretary of the Treasury (afterwards to the Secretary of the

Interior), who should approve the same, so far as they were not claimed or held by individuals, "and, *on that approval,* the fee simple to said lands"should "vest in the state of Louisiana, subject to the disposal of the Legislature thereof"; and, further, that:

"In making out a list of those swamp lands subject to overflow and unfit for cultivation, all legal subdivisions, the greater part of which is of that character, shall be included in said list, but, when the greater part of a subdivision is not of that character, the whole of it shall be excluded therefrom: Provided, however, that the provisions of this act shall not apply to any other lands, fronting on rivers, creeks, bayous, water courses, etc., which have been surveyed into lots or tracts, under the acts of March 3, 1811, 2 Stat. 662, c. 46, and May 24, 1824, 4 Stat. 34, c. 141," etc.

Upon a copy of one of the plats of survey, filed in evidence, there appears the legend, "All within green lines is swamp land," and the green lines include the west half of section 35 and all of section 34, save the southwest corner, which was then under water; hence, as the section had not been divided into lots or tracts, the law required that the whole of it should be conveyed to the state, "subject to the disposal of the Legislature thereof." Act of Congress of March 2, 1849, c. 87, 9 Stat. 352, to be found in volume 1, Digest to Revised Statutes of Louisiana of 1870, p. 154, and Rev. St. 1870, p. 569.

The Legislature, in 1855 (Laws 1855, No. 247), enacted a law (afterwards incorporated in the Revised Statutes) authorizing the sale of warrants, to be located on the surveyed lands so acquired, and containing the following provisions in regard to lands lying beneath the waters of shallow lakes, to wit:

"Any shallow lakes which have become the property of the state and are susceptible of being reclaimed, wholly or in part, and not navigable, *the area of which has been ascertained by survey recognized by the state,* may also be sold under the provisions of this section. No lands shall be sold for less than one dollar and twenty-five cents per acre. The register of the state land office shall procure plats or maps of all swamp lands donated to Louisiana, certified by the surveyor general, and shall mark thereon, on each tract of land purchased, the number of the certificate issued therefor, and shall keep a well bound book in his office, in which shall be entered, in proper form, all the lands thus sold, to whom sold, and for what price, which book and map shall be carefully preserved and shall be deemed official records." R. S. La. §§ 2929, 2930.

[2] A copy of the plat or map of section 34, thus required, was produced by the register, and shows that the upper part of the section, to the north and east, as we take it, of Boggy bayou, was sold for certificate 7087 to W. T. Fortson, and the southwest corner was sold, after the survey by Trichel, for certificate 1806, shown to have been issued to C. R. Yarborough. The official record, therefore, does not, so far, show the sale of the land in dispute to plaintiff's author in title and leaves plaintiff's contention in that respect with no other support than is to be found in the language of the entry upon the books of the land office to the effect that his author acquired "all of fractional section 34" containing 560 acres, but which entry is not shown to be a verbatim copy of the patent to which it refers. That contention is based upon the idea that the state had acquired section 34 as a fractional section, that, as such, it contained 560 acres, and that plaintiff, having acquired all of it, is entitled to 560 acres, whether they were originally to be found in the supposed "fractional section" or not. But the title of the state—i. e., the list *as approved by the Secretary of the Interior*—showed that section 34 was acquired as a whole, and not as a fractional, section, and the law so required; and the title also showed that there had been but a partial survey, and that the acreage was merely estimated, and could not have been otherwise; and, finally, under the law by which the entryman and the register alike were governed, the register had no authority to sell, or to include in a sale, the submerged and unsurveyed land. The estimation of the acreage, evidently and necessarily, related to the visible land which was assumed

to have been surveyed and was taken as constituting all of the supposed fractional section, and, in getting all of that land, the entryman got all that he bargained for, unless he thereby also acquired some right of accretion which would entitle him to part, or all, of the land contained in the whole section, as it might be uncovered and surveyed. He could not have acquired such right, however, because the register could no more have sold that right to him than he could have sold the unsurveyed land itself, since the owner, the state, had not authorized him to do so.

[3] It is argued here, though we find nothing in the petition on the subject, that the entryman acquired the right of accretion as a riparian proprietor, but it is not clear that the survey upon which his title is predicated extended to the border of the lake. Conceding, arguendo, however, that it did, and that the law which withholds unsurveyed land from sale is not to be considered, the conditions which might entitle plaintiff, as the successor of his entryman, to land uncovered by the recession of the waters of the lake are not shown to have existed. It is not suggested that the land here claimed is alluvion, added to that of which the entryman went into possession, "successively and imperceptibly," by the waters of a river or a stream (as contemplated by C. C. art. 509), nor yet that it is land which has been left dry by running water, retiring, imperceptibly, from one of its shores, and encroaching upon another (within the meaning of C. C. art. 510).

We understand it to have formed the bottom of a shallow lake which has been drained by the act of man and the expenditure of public money, and, in that case, the law has provided for its disposition. The judge a quo rejected plaintiff's demand and dismissed his suit, and for the reasons assigned, his judgment is

Affirmed.